Robert L. Galantucci, Esq., Attorney ID No. 262991970
David J. Altieri, Esq., Attorney ID No. 028322009
GALANTUCCI, PATUTO, DEVENCENTES, POTTER & DOYLE, L.L.C.
55 State Street
Hackensack, New Jersey 07601
(201) 646-1100
Attorneys for Plaintiff, Michael Cioffi

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL CIOFFI,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF ENGLEWOOD CLIFFS, MARIO M. KRANJAC *(In his Official and Individual Capacities)*, CARROL MCMORROW *(In her Official and Individual Capacities)*, NUNZIO CONSALVO *(In his Official and Individual Capacities)*, MARK PARK *(In his Official and Individual Capacities)*,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Michael Cioffi, residing in the County of Bergen, State of New Jersey, as and for his Complaint against Defendants, sets forth the following:

## PARTIES

1. Plaintiff, Michael Cioffi, is an individual resident of the State of New Jersey, residing within the District of New Jersey of the United States District Court.  He is the Chief

1

of Police of the Police Department of Englewood Cliffs, New Jersey (hereafter "the Department"), and is located at 10 Kahn Terrace, Englewood Cliffs, New Jersey 07632.  He began his career as a police officer in the City of Hackensack on November 15, 1976, and transferred to the Borough on January 19, 1984, and has been promoted up the command ladder over the course of his forty (40) year career to the position of Chief of his department, to which he was appointed on July 14, 2010.

2. The Borough is a municipal corporation of the State of New Jersey, located within the District of New Jersey of the United States District Court, qualifying as a "person" under 42 U.S.C. § 1983 pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and located at 482 Hudson Terrace, Englewood Cliffs, New Jersey 07632.

3. Mario M. Kranjac is the current mayor of the Borough (hereafter "Kranjac"), located at 482 Hudson Terrace, Englewood Cliffs, New Jersey 07632.

4. Carrol McMorrow is the sitting Council President of the Borough (hereafter "Council President McMorrow"), located at 482 Hudson Terrace, Englewood Cliffs, New Jersey 07632.

5. Nunzio Consalvo is a sitting councilperson for the Borough (hereafter "Consalvo"), located at 482 Hudson Terrace, Englewood Cliffs, New Jersey 07632.

6. Mark Park is a sitting councilperson for the Borough (hereafter "Park"), located at 482 Hudson Terrace, Englewood Cliffs, New Jersey 07632.

## PRELIMINARY STATEMENT

7.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the violation by Defendants of Plaintiff's rights as secured by the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as the New Jersey Constitution, and New Jersey state law.

8.  The Borough of Englewood Cliffs (hereafter "the Borough"), through the official actions of the Mayor and Council  and the individual actions of Kranjac, Council President McMorrow, Consalvo, Park, and the conspiracy among them all under color of state law in their capacities as elected official of the Borough, committed acts depriving Plaintiff of rights secured by the United States Constitution, the New Jersey Constitution, and New Jersey state law, by retaliating against him for exercising his right to free political speech, to wit, engaging in political speech and activities in support of the slate of candidates running against the current elected Mayor and Council by unlawfully interfering with his authority to carry out his duties and unlawfully suspending him from his position as a Borough employee.

9.  The Borough, through the official actions of the Mayor and Council and the individual actions of Kranjac, Council President McMorrow, Consalvo, Park, and the conspiracy among them, all under color of state law in their capacities as elected official of the Borough committed acts depriving Plaintiff of rights secured by the United States Constitution, the New Jersey Constitution, and New Jersey state law, by retaliating against him for speaking out about a matter of public concern, to wit, the alleged harassment of a police officer because of his sexual orientation by Deputy

3

Chief Michael McMorrow by unlawfully interfering with his authority to carry out his duties and unlawfully suspending him from his position as a Borough employee.

## JURISDICTION AND VENUE

10. This Court has jurisdiction of Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §§ 1983 and 1988.

11. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all state claims pleaded herein.

12. This Court has personal jurisdiction over Defendants.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

14. Plaintiff is a long-time supporter of the Democratic Party in the Borough.

15. Over the course of his career at the Department, he repeatedly endorsed former Mayor Joseph Parisi, Jr. and his father, who also served as Mayor before him.

16. During the 2015 election campaign, with the endorsement of Mayor Joseph Parisi, Jr., Joseph Favaro ran for mayor in Englewood Cliffs on the Democratic ticket. Plaintiff similarly supported Mr. Favaro.

17. Over the course of many years, Plaintiff has provided rides for voters, while off duty, to get to polling stations.

18. Plaintiff has purchased advertising space in the local journal on behalf of the Democratic ticket.

19. Plaintiff's wife has contributed to Democratic campaigns within the Borough, including in support of the 2015 election.

20. Plaintiff was at the Democratic Party headquarters on the night of the election supporting the Democratic ticket.

21. Following a contested election, on November 3, 2015, Kranjac – a Republican candidate – was elected as Mayor of the Borough.

22. On December 9, 2015, Plaintiff was present during the deposition of Englewood Cliffs Police Lieutenant James Tracy (hereafter "Tracy") in the matter of <u>Michael McMorrow v. The Borough of Englewood Cliffs, <i>et al</i></u>., Docket No. BER-L-9051-12. During that deposition, it came to Plaintiff's attention that Tracy alleged that had been the subject of discrimination and sexual harassment based on his sexual orientation by an officer within the Department, namely Deputy Chief McMorrow, the husband of Defendant Council President McMorrow.

23. Specifically, Tracy testified that Deputy Chief McMorrow harassed Tracy by calling him demeaning and improper names such as "cocksucker" on numerous occasions due to his sexual orientation.  Tracy had also been referred to as a "fucking faggot" and was subject to further verbal abuse in the presence of other Borough employees.

24. Plaintiff believed such discrimination and harassment to be in violation of a law, regulation, rule, or public policy.

25. On December 17, 2015, Plaintiff, in his capacity as Chief of Police, reached out to Mayor Elect Kranjac to discuss the potential resolution of a long-standing problem with an officer within the Department, (hereafter referred to as "John Doe Number One").  Kranjac refused that meeting, indicating that he would meet only once his term began and that Deputy Chief McMorrow must be present.

26. John Doe Number One had been excused from work or on light duty due to medical issues since 2012.  Early in 2015, Plaintiff developed concerns about John Doe Number One's fitness for duty.  Over the course of the next several months, Plaintiff unsuccessfully endeavored to secure a medical authorization form from John Doe Number One.  At that point, based on performance concerns and a failure to disclose prescription medications to the Department as required, Plaintiff ordered John Doe Number One to undergo a fitness for duty examination, which he underwent on November 18, 2015.  On or about December 1, 2015, shortly before Plaintiff requested a meeting with Mayor Elect Kranjac, the doctor who performed the evaluation advised the Department that it was her opinion that John Doe Number One was unfit for duty.

27.  Kranjac was sworn in as Mayor on January 3, 2016.

28.  On January 4, 2016, Plaintiff, in his capacity as Chief of Police, met with Kranjac. As per Kranjac's demand, Deputy Chief McMorrow was present.  During the meeting, Kranjac indicated that all information he communicated to Plaintiff, he would also communicate to Deputy Chief McMorrow, and that Deputy Chief McMorrow must be present at all council meetings.

29. Kranjac further indicated that he had placed a member of the Department, Officer Jae Lee, on a town Public Safety Committee, to which Plaintiff objected based upon the statutorily guaranteed right as Chief to prescribe the duties and assignments of all subordinates.

6

30. Kranjac then stated: "You did not vote for me.  You did not support my ticket.  You didn't want me to win.  You were on the wrong team."  Kranjac indicated that he had been told that information by members of the fire department.  Plaintiff confirmed that he did not, in fact, vote for Kranjac or his ticket and stated the reasons for his lack of support.

31. Following the initial meeting, Kranjac continued to insist that Deputy Chief McMorrow be present at all council meetings, indicating that his presence was "mandatory," despite Plaintiff's statutorily guaranteed right to prescribe the duties and assignments of all subordinates.

32. The authority of a chief of police is codified in N.J.S.A. 2C:40A:14-118, also known as the "Police Chiefs' Bill of Rights," which provides that a chief "shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof…"  While a chief has a responsibility to carry out the policies established by the appropriate authority, it is his or her responsibility to: "a. Administer and enforce rules and regulations and special emergency directives for the disposition and discipline of the force and its officers and personnel; b. Have, exercise, and discharge the functions, powers and duties of the force; c. Prescribe the duties and assignments of all subordinates and other personnel; d. Delegate such of his authority as he may deem necessary for the efficient operation of the force to be exercised under his direction and supervision; and e. Report at least monthly to the appropriate authority in such form as shall be prescribed by such authority on the operation of the force during the preceding month,

and make such other reports as may be requested by such authority." <u>N.J.S.A.</u> 2C:40A:14-118.

33. On January 8, 2016, Plaintiff gave a copy of <u>N.J.S.A.</u> 2C:40A:14-118, or the "Police Chiefs' Bill of Rights," to Borough Attorney Brent R. Pohlman (hereafter "Pohlman"), who indicated that he interprets the statute differently.

34. During the course of Kranjac's mayoral term, the Mayor and Council have worked consistently to retaliate against Plaintiff by undermining his authority as Chief of Police and interfering with the day-to-day operation of the Department, in many instances going outside of the chain of command.

35. Later on January 8, 2016, Plaintiff met with Kranjac and Pohlman and provided them with negative letters received with respect to John Doe Number One as well as his failed fitness for duty examination.  Kranjac and Pohlman denied Plaintiff's request that John Doe Number One, already deemed to be unfit for duty, be suspended or placed on administrative leave, instead insisting on scheduling another fitness for duty evaluation for him.

36. On January 13, 2016, Plaintiff provided Deputy Chief McMorrow a written order that he was not to attend any council meetings as a representative of the Department.  At the council meeting that evening, Deputy Chief McMorrow gave the order to his wife, Council President McMorrow, who then gave it to Kranjac, who told Plaintiff in the caucus room: "I don't need you here.  I don't want you here.  Leave."

37. Prior to the February 10, 2016 council meeting, Kranjac sent an email message to the Borough Administrator to inform Plaintiff that he and Deputy Chief McMorrow were

not needed at the meeting.  At that meeting, Pohlman introduced a resolution in an attempt to mandate Deputy Chief McMorrow's presence at meetings.

38. On February 10, 2016, Plaintiff lodged an internal affairs complaint requesting that the Department's Internal Affairs Division investigate the conduct of Deputy Chief McMorrow with respect to his alleged discriminatory activity that came to Plaintiff's attention during the December 9, 2015 deposition of Lieutenant Tracy.  Plaintiff provided the Internal Affairs Unit of the Department with a copy of the deposition transcript in which Lieutenant Tracy made his allegations.

39. On February 15, 2016, Plaintiff met with Kranjac, Park, and Consalvo to discuss the budget.  At the meeting, Kranjac demanded that overtime pay within the Department stop or be drastically limited despite the fact that such matters are governed by contract.  Kranjac indicated that Plaintiff would not be permitted to have any officer appear in the municipal court for any defendant's first appearance.  He demanded that Plaintiff change officer shifts around in order to limit overtime, contrary to the Chiefs' Bill of Rights guarantee that Plaintiff prescribe the duties and assignments of all subordinates and other personnel.  When Plaintiff insisted that he would not do anything to violate the contract or any other rules, Kranjac told Plaintiff that he "could be brought up as insubordinate."

40. On February 16, 2016, Kranjac held a meeting with Council President McMorrow, Pohlman by way of telephone, and the Department's Information Technology Coordinator.  Upon information and belief, Kranjac indicated that he wanted complete control over the Department's computer systems, contrary to state protocols.

41. On or about February 17, 2016, Pohlman circulated an electronic file retention protocol memorandum that was to affect the Department, despite issues with expungements, confidential reports, computer report voids, cancelling warrants, recovered stolen items, as well as protocols mandated by the State.

42. On February 26, 2016, Kranjac accused Plaintiff of refusing to meet with or provide overtime vouchers and overtime slips to Pohlman or the Borough Administrator, despite having already done so.

43. That same day, Deputy Chief McMorrow advised Plaintiff of a pre-scheduled meeting between himself and Kranjac to discuss traffic issues.  Plaintiff had not been notified of the meeting prior to that date.

44. On March 4, 2016, the Borough Administrator informed Plaintiff that she had been directed by Pohlman to provide Council President McMorrow with all emails and reports relating to the Department despite the fact that her relationship with the Deputy Chief, her husband, precluded her from being involved in police business.

45. On March 7, 2016, at a budget meeting, Kranjac again criticized Plaintiff's efforts to reduce overtime pay despite the Borough's contractual obligations.

46. Kranjac then stated to Plaintiff, "You said that the wrong team won… November 5th you said the wrong team won.  Ok!  The wrong team won.  The guys on Friday confirmed it."  Upon information and belief, Kranjac had met with Lieutenant Tracy and Sergeant Waldt of the Department on the Friday being referred to, outside of the chain of command of the Department.  After the same meeting Kranjac later stated:

"This is my town now!"  He explained that he refused to meet with Plaintiff in December because he wanted to wait "until I had control over you."

47. Kranjac then suggested that the Drug Enforcement Agency (D.E.A.) forfeiture fund be utilized to make up budget shortfalls, this being unlawful, and would result in the federal government refusing to provide said funds.

48. On March 11, 2016, Kranjac told Plaintiff via email to "stop incurring overtime for administrative matters such [as] internal affairs investigations," which is beyond the scope of Kranjac's authority pursuant to the Chiefs' Bill of Rights.

49. On March 21, 2016, the Mayor indicated to Plaintiff that he has "copied Deputy Chief McMorrow as he is also a resource for you in terms of budgeting."

50. At a meeting on March 29, 2016 between Plaintiff, Kranjac, and Pohlman, at which Captain Regan and Captain Murphy of the Department were intermittently present, Kranjac indicated: "I'm allowed to talk to anyone!  Bottom line, I've dealt with people like you my whole life, standing in the way.  Forget rules.  I would go around you."  He then stated: "The rules are I'm allowed to talk to anyone I want to.  In a public setting, I would never, never ever say anything about you or anyone, but you did!" apparently referring to the fire department meeting.

51. Later during the meeting he explained: "The minute I won the election, you get up in front of the police department and the fire department and your guys don't have to say yes or no and you said the 'wrong team' won and I heard a lot of other things happened.  Ok.  It stops right now!  I told you January 4th it stops and you just can't

get it through your head!  It stops!"  He then said: "I'm telling you right now, I don't want to hear about what you're saying about me.  We tried to work with you."

52. On or about March 28, 2016 Plaintiff received a "Rice Notice" from the Borough Clerk [see <u>Rice v. Union County Regional High School, Bd. of Education,</u>  155 N.J. Super. 64 (App. Div. 1977)],   declaring that certain specified "captioned matters" were to "be discussed" at the regular meeting of Defendant on April 13, 2016.  Those "matters" were "overtime expenditures, internal affairs procedures, PBA Complaints."  Plaintiff returned the "Rice Letter" requesting an "open public discussion" of those matters.  Plaintiff was not provided with any other notice of what was to be discussed.

53. On April 13, 2016, during the regular meeting of the Mayor and Council, following a "presentation" by Pohlman, Consalvo made an oral "motion" or "resolution" read from a pre-prepared text moving that Plaintiff be immediately placed on "administrative leave" with pay pending an investigation by the Bergen County Prosecutor, despite the fact that no such investigation then existed, and an "administrative investigation" by the Mayor and Council.  This "motion" was immediately put to a vote and with a vote of 2-2 with one abstention, Kranjac broke the tie, and the motion was carried.  Consalvo and Park cast votes in favor of the motion.  Council President McMorrow indicated that she had recused herself, but was present in an anteroom to the Council Chambers with the door open for much of the proceedings.  Deputy Chief McMorrow, the husband of Council President McMorrow, was subsequently named "Acting Chief" by the Mayor and Council.

54. At no time prior to April 13, 2016 and to the date of the filing of this Complaint was Plaintiff ever served with a Preliminary Notice of Disciplinary Action (P.N.D.A.) setting forth charges and specifications against him as required by N.J.S.A. 40A:14-147 in non-civil service municipalities; nor has he been charged with any offense in any criminal complaint; nor was he provided with any written notice of any charges or provided with a hearing; nor was he provided with the opportunity to present evidence in his own behalf or to cross examine witnesses.

55. During the course of the April 13, 2016 council meeting, Plaintiff was repeatedly accused of "ticket fixing" without any basis in fact, the suggestion being that he had committed a crime.  In fact, Kranjac stated that "there's issues violating the law, basically."  Those allegations are false, but the publicizing of the accusation has embarrassed and humiliated Plaintiff and will impair his ability to secure future employment and further undermined Plaintiff's authority as Chief.

56. Ultimately, the "appropriate authority" in a non-civil service municipality, or its designee, is charged with the responsibility of serving a notice of disciplinary action, holding a hearing and making a decision on disciplinary charges relating to the violation of any rules and regulations of the Department.  State law governs the due process rights of police officers as set forth in Title 40A with respect to disciplinary matters, and governs the conduct and actions the Mayor and Council acting in its non-legislative functions as the "appropriate authority" administering the provisions of police discipline.

57. Pursuant to an ordinance presently designated as Ord. 2-13, the Mayor and Council was designated as the "appropriate authority" with respect to the Department "as provided in [N.J.S.A. 40A:14-118]."  Pursuant to Ord. 2-13.3, [t]he Mayor and Council [as the appropriate authority] shall have the exclusive right to preside and adjudicate all matters in regard to any hearing held pursuant to N.J.S.A. 40A:14-148." N.J.S.A. 40A:14-148 specifically relates to the hearing of "the [disciplinary] charge or charges made against a member or officer of the police department."

58. By taking such action, Defendant Mayor and Council failed to comply with any of the due process procedures set forth in N.J.S.A. 40A:14-147, et seq.

59. On April 29, 2016, this office filed an Action in Lieu of Prerogative Writs pursuant to N.J. Court Rule 4:69-1, accompanied by an Order to Show Cause filed pursuant to N.J. Court Rule 4:52-1(b) in the Superior Court of New Jersey, Law Division, Bergen County.  That matter was listed under Docket No. BER-L-3468-16.

60. On May 12, 2016, the Mayor and Council "restored [Plaintiff] to active duty."

61. Over the course of the last few months, Kranjac has continued to retaliate against Plaintiff by interfering with the day-to-day operation of the Department, well beyond the scope of his authority as Mayor and in violation of N.J.S.A. 40A:14-118.

62. On July 7, 2016, Stefani C. Schwartz, Esq. of Schwartz, Simon, Edelstein & Celso, L.L.C. filed a Notice of Removal of the state court action to this Court, which is listed under Docket No. 16-CV-04062-WJM-MF.

## COUNT I

### First Amendment Retaliation

14

63. Plaintiff repeats and realleges all of the prior paragraphs, as if fully set forth herein.

64. During the period leading up to the November 3, 2015 Borough election for Mayor and Council, Plaintiff engaged in political speech and activities in support of the Democratic slate for Mayor and Council as described and recited in the facts of this complaint.

65. The political speech engaged in by Plaintiff during the municipal election race is protected speech in that it is speech and activity aimed at a local government unit election and further this speech is regarding a matter of public concern – the local Borough Mayor and Council race.

66. Kranjac, Carrol McMorrow, and Park ran on the Republican slate for Mayor and Council and were the winners of the November 3, 2015 election.

67. The Mayor was sworn in on January 3, 2016 as the Mayor of the Borough.

68. Based substantially on Plaintiff's support by words and conduct of the Democratic ticket for Mayor and Council of the Borough, Kranjac retaliated against Plaintiff by attempting to marginalize Plaintiff's authority, usurping Plaintiff's public office as Chief of Police of the Borough and orchestrating, executing, and voting for the suspension of Plaintiff from his position as Chief of the Department without any basis in law or fact, as recited in the facts of the Complaint.

69. At all times relevant herein, Defendant Kranjac was acting under the color of law and under the authority of the Borough as it's duly elected Mayor.

70. As a direct and proximate cause of the retaliation by Defendant Kranjac under color of law as the Mayor against Plaintiff for his exercise of his right to engage in

protected political speech pursuant to the First and Fourteenth Amendments to the United States Constitution, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Mayor Mario M. Kranjac, in his individual and official capacities, pursuant to 42 U.S.C. 1983 along with court costs and attorneys' fees pursuant to 42 U.S.C. §1988 and such other and further relief including a Court Order enjoining further retaliation.

## COUNT II
### First Amendment Retaliation

71. Plaintiff repeats and realleges all of the prior paragraphs, as if fully set forth herein.

72. On December 9, 2015, Plaintiff was present during the deposition of Englewood Cliffs Police Lieutenant James Tracy (hereafter "Tracy") in the matter of <u>Michael McMorrow v. The Borough of Englewood Cliffs, et al.</u>, Docket No. BER-L-9051-12. During that deposition, it came to Plaintiff's attention that Tracy alleged that had been the subject of discrimination and sexual harassment based on his sexual orientation by an officer within the department, namely Deputy Chief McMorrow.

73. Specifically, Tracy testified that Deputy Chief McMorrow harassed Tracy by calling him demeaning and improper names such as "cocksucker" on numerous occasions due to his sexual orientation. Tracy had also been referred to as a "fucking faggot" and was subject to further verbal abuse in the presence of other Borough employees.

74. On February 10, 2016, Plaintiff lodged a complaint with the Department's Internal Affairs Division seeking an investigation into the conduct of Deputy Chief

16

McMorrow with respect to his alleged discriminatory activity which came to Plaintiff's attention during the December 9, 2015 deposition of Lieutenant Tracy.

75. Plaintiff's lodging of a complaint with the Department's Internal Affairs Division seeking an investigation into the conduct of Deputy Chief McMorrow (the husband of Council President McMorrow) for allegedly harassing an officer because of his sexual orientation under his command is a matter of public concern because it involves the potential harassment of a public employee by a superior based upon sexual orientation.

76. Based substantially on Plaintiff's lodging of a complaint with the Department's Internal Affairs Division, Council President McMorrow retaliated against Plaintiff by attempting to marginalize Plaintiff's authority, usurping Plaintiff's public office as Chief of Police of the Borough and orchestrating and executing the suspension of Plaintiff from his position as Chief of the Department without any basis in law or fact, as recited in the facts of the Complaint.

77. At all times relevant herein, Council President McMorrow was acting under the color of law and under the authority of the Borough as a councilperson.

78. As a direct and proximate cause of the retaliation by Defendant McMorrow under color of law as the Council President against Plaintiff for his exercise of his right to engage in speech about a matter of public concern pursuant to the First and Fourteenth Amendments to the United States Constitution, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Council President McMorrow, in her individual and official capacities, pursuant 42 U.S.C. 1983 along with court costs and attorneys' fees pursuant to 42 U.S.C. §1988 and such other and further relief including a Court Order enjoining further retaliation.

## COUNT III

### Common Law Conspiracy to Violate Civil Rights

79. Plaintiff repeats and realleges all of the prior paragraphs, as if fully set forth herein.

80. Kranjac, Council President McMorrow, Consalvo, and Park were all acting in their official capacities as elected officials of the Borough at all times relevant hereto.

81. Kranjac, Council President McMorrow, Consalvo, and Park conspired to arrange for a Mayor and Council vote for the suspension of Plaintiff based upon his exercise of protected political speech.

82. Kranjac, Council President McMorrow, Consalvo, and Park conspired to arrange for a Mayor and Council vote for the suspension of Plaintiff based upon his exercise of speech about a matter of public concern.

83. Kranjac, Council President McMorrow, Consalvo, and Park acted in concert to commit the unlawful act of retaliating against Plaintiff based upon his political speech and his speech about a matter of public concern.

84. Kranjac, Council President McMorrow, Consalvo, and Park committed an overt act in furtherance of this conspiracy to violate Plaintiff's rights protected under the First and Fourteenth Amendments to the Constitution of the United States by arranging for a

council meeting, participating in a council meeting, and voting to suspend Plaintiff at that council meeting as a member of the Mayor and Council of the Borough.

85. By conspiring among and with one another and acting in concert to suspend Plaintiff in retaliation for Plaintiff exercising his rights under the First and Fourteenth Amendments to the Constitution of the United States as members of the Mayor and Council of the Borough, Kranjac, Council President McMorrow, Consalvo, and Park have committed a common law conspiracy to violate Plaintiff's civil rights under 42 U.S.C. §1983.

86. Plaintiff has been damaged as a direct and proximate result of the conspiracy to violate Plaintiff's civil rights under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Mayor Mario M. Kranjac, Council President Carrol McMorrow, Consalvo, and Park, jointly and severally, in their individual and official capacities, pursuant to 42 U.S.C. §1983 along with court costs and attorneys' fees pursuant to 42 U.S.C. §1988 and such other and further relief including a Court Order enjoining further retaliation.

## COUNT IV

### Civil Rights Violation – Borough of Englewood Cliffs

87. Plaintiff repeats and realleges all of the prior paragraphs, as if fully set forth herein.

88. Kranjac, Council President McMorrow, Consalvo, and Park were all acting in their official capacities as elected officials of the Borough at all times relevant hereto.

89. The Borough is a person under 42 U.S.C. §1983.

90. On April 13, 2016, the Borough convened a meeting of the Mayor and Council.

91. On April 13, 2016, the Mayor and Council by vote caused the Borough to implement a formal policy officially endorsed by the Borough to suspend Plaintiff in retaliation for Plaintiff exercising his rights under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983.

92. On April 13, 2016, the Mayor and Council by vote of the Borough to suspend Plaintiff in retaliation for Plaintiff exercising his rights under the First and Fourteenth Amendments to the United States Constitution constitutes a decision by officials with final decision making authority – the Mayor and Council of the Borough – which caused the violation of Plaintiff's civil rights under 42 U.S.C. §1983.

93. At all times relevant herein, the Borough was acting under the color of law and under the authority granted it by the State of New Jersey.

94. As a direct and proximate cause of the retaliation by Defendant Borough under color of law against Plaintiff for his exercise of his right to engage in speech about a matter of public concern and for his exercise of political speech, both activities protected under the First and Fourteenth Amendments, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory damages against The Borough of Englewood Cliffs pursuant to 42 U.S.C. §1983 along with court costs and attorneys' fees pursuant to 42 U.S.C. §1988 and such other and further relief including a Court Order enjoining further retaliation.

<u>**COUNT V**</u>

20

## Dismissal Without Procedural Due Process

95. Plaintiff repeats and realleges all of the prior paragraphs as if fully set forth herein.

96. The conduct of Defendants proximately caused a deprivation of Plaintiff's rights under 42 U.S.C. §§ 1983 and 1988 and secured by the Fifth and Fourteenth Amendments to the United States Constitution, as well as the New Jersey Constitution, and New Jersey state law.

97. On or about March 28, 2016 Plaintiff received a "Rice Notice" from the Borough Clerk, which he returned requesting an "open public discussion," though was not provided with notice that the Mayor and Council were seeking to suspend him from his position as Chief of Police.  On April 13, 2015, the Mayor and Council by vote caused the Borough to implement a formal policy officially endorsed by the Borough to suspend Plaintiff.

98. The Mayor and Council failed to adhere to the due process protections codified in N.J.S.A. 40A:14:147 et seq. or provide any form of reasonable due process in suspending Plaintiff by way of an unlawful, politically motivated ambush.

99. Plaintiff had a legitimate claim of entitlement to his continued employment without suspension, and thus a property interest therein, and the right to the due process procedures secured to him by N.J.S.A. 40A:14:147 et seq.

100.    At all times relevant herein, Defendants were acting under the color of law and under the authority of the Borough.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Mayor Mario M. Kranjac, Council President Carrol McMorrow, Consalvo, and jointly and severally, in their individual and official capacities, pursuant to 42 U.S.C. §1983 along with court costs and attorneys' fees pursuant to 42 U.S.C. §1988 and such other and further relief including a Court Order enjoining further retaliation.

## COUNT VI

### Violation of Liberty Interest

101.    Plaintiff repeats and realleges all of the above paragraphs as if fully set forth herein.

102.    The conduct of Defendants proximately caused a deprivation of Plaintiff's rights under 42 U.S.C. § 1983 and secured by the Fifth and Fourteenth Amendments to the United States Constitution, as well as the New Jersey Constitution, and New Jersey state law.

103.    Specifically, as set forth above, during the course of the April 13, 2016 council meeting, and without prior notice, Plaintiff was repeatedly accused of "ticket fixing" without any basis in fact, the suggestion being that he had committed a crime, without giving Plaintiff an opportunity to respond.   Those allegations are false, but the publicizing of the accusation has embarrassed and humiliated Plaintiff and will impair his ability to carry out his duties as Chief of Police or secure future employment. Those allegations also provided a false basis upon which Defendants suspended Plaintiff from his lawfully held position.

104.   At all times relevant herein, Defendants were acting under the color of law and under the authority of the Borough.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Mayor Mario M. Kranjac, Council President Carrol McMorrow, Consalvo, and Park, jointly and severally, in their individual and official capacities, pursuant to 42 U.S.C. §1983 along with court costs and attorneys' fees pursuant to 42 U.S.C. §1988 and such other and further relief including a Court Order enjoining further retaliation.

## COUNT VII

## New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c)

105.   Plaintiff repeats and realleges all of the above paragraphs as if fully set forth herein**.**

106.   Plaintiff repeats and realleges all of the prior paragraphs, as if fully set forth herein.

107.   During the period leading up to the November 3, 2015 Borough election for Mayor and Council, Plaintiff engaged in political speech and activities in support of the Democratic slate for Mayor and Council as described and recited in the facts of this complaint.

108.   The political speech engaged in by Plaintiff during the municipal election race is protected speech in that it is speech and activity aimed at a local government unit election and further this speech is regarding a matter of public concern – the local Borough Mayor and Council race.

109.    Kranjac, Carrol McMorrow, and Park ran on the Republican slate for Mayor and Council and were the winners of the November 3, 2015 election.

110.    The Mayor was sworn in on January 3, 2016 as the Mayor of the Borough.

111.    Based substantially on Plaintiff's support by words and conduct of the Democratic ticket for Mayor and Council of the Borough, Kranjac retaliated against Plaintiff by attempting to marginalize Plaintiff's authority, usurping Plaintiff's public office as Chief of Police of the Borough and orchestrating, executing, and voting for the suspension of Plaintiff from his position as Chief of the Department without any basis in law or fact, as recited in the facts of the Complaint.

112.    At all times relevant herein, Defendant Kranjac was acting under the color of law and under the authority of the Borough as it's duly elected Mayor.

113.    As a direct and proximate cause of the retaliation by Defendant Kranjac under color of law as the Mayor against Plaintiff for his exercise of his right to engage in protected political speech pursuant to the United States Constitution and New Jersey Constitution, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Mayor Mario M. Kranjac, in his individual and official capacities, pursuant to N.J.S.A. 10:6-2(c) along with court costs and attorneys' fees pursuant to N.J.S.A. 10:6-2(f) and such other and further relief including a Court Order enjoining further retaliation.

## **COUNT VIII**

## New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c)

114.  Plaintiff repeats and realleges all of the prior paragraphs, as if fully set forth herein.

115.  On December 9, 2015, Plaintiff was present during the deposition of Englewood Cliffs Police Lieutenant James Tracy (hereafter "Tracy") in the matter of Michael McMorrow v. The Borough of Englewood Cliffs, et al., Docket No. BER-L-9051-12. During that deposition, it came to Plaintiff's attention that Tracy alleged that had been the subject of discrimination and sexual harassment based on his sexual orientation by an officer within the department, namely Deputy Chief McMorrow.

116.  Specifically, Tracy testified that Deputy Chief McMorrow harassed Tracy by calling him demeaning and improper names such as "cocksucker" on numerous occasions due to his sexual orientation.  Tracy had also been referred to as a "fucking faggot" and was subject to further verbal abuse in the presence of other Borough employees.

117.  On February 10, 2016, Plaintiff lodged a complaint with the Department's Internal Affairs Division seeking an investigation into the conduct of Deputy Chief McMorrow with respect to his alleged discriminatory activity which came to Plaintiff's attention during the December 9, 2015 deposition of Lieutenant Tracy.

118.  Plaintiff's lodging of a complaint with the Department's Internal Affairs Division seeking an investigation into the conduct of Deputy Chief McMorrow (the husband of Council President McMorrow) for allegedly harassing an officer because of his sexual

orientation under his command is a matter of public concern because it involves the potential harassment of a public employee by a superior based upon sexual orientation.

119.   Based substantially on Plaintiff's lodging of a complaint with the Department's Internal Affairs Division, Council President McMorrow retaliated against Plaintiff by attempting to marginalize Plaintiff's authority, usurping Plaintiff's public office as Chief of Police of the Borough and orchestrating and executing the suspension of Plaintiff from his position as Chief of the Department without any basis in law or fact, as recited in the facts of the Complaint.

120.    At all times relevant herein, Council President McMorrow was acting under the color of law and under the authority of the Borough as a councilperson.

121.   As a direct and proximate cause of the retaliation by Defendant McMorrow under color of law as the Council President against Plaintiff for his exercise of his right to engage in speech about a matter of public concern pursuant to the First and Fourteenth Amendments to the United States Constitution and New Jersey Constitution, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Council President McMorrow, in his individual and official capacities, pursuant to N.J.S.A. 10:6-2(c) along with court costs and attorneys' fees pursuant to N.J.S.A. 10:6-2(f) and such other and further relief including a Court Order enjoining further retaliation.

## COUNT IX

## New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c) – Conspiracy

122.   Plaintiff repeats and realleges all of the prior paragraphs, as if fully set forth herein.

123.   Kranjac, Council President McMorrow, Consalvo, and Park were all acting in their official capacities as elected officials of the Borough at all times relevant hereto.

124.   Kranjac, Council President McMorrow, Consalvo, and Park conspired to arrange for a Mayor and Council vote for the suspension of Plaintiff based upon his exercise of protected political speech.

125.   Kranjac, Council President McMorrow, Consalvo, and Park conspired to arrange for a Mayor and Council vote for the suspension of Plaintiff based upon his exercise of speech about a matter of public concern.

126.   Kranjac, Council President McMorrow, Consalvo, and Park acted in concert to commit the unlawful act of retaliating against Plaintiff based upon his political speech and his speech about a matter of public concern.

127.   Kranjac, Council President McMorrow, Consalvo, and Park committed an overt act in furtherance of this conspiracy to violate Plaintiff's rights protected under the Constitution of the United States and New Jersey Constitution by arranging for a council meeting, participating in a council meeting, and voting to suspend Plaintiff at that council meeting as a member of the Mayor and Council of the Borough.

128.   By conspiring among and with one another and acting in concert to suspend Plaintiff in retaliation for Plaintiff exercising his rights under the Constitution of the

United States and the New Jersey Constitution as members of the Mayor and Council of the Borough, Kranjac, Council President McMorrow, Consalvo, and Park have committed a common law conspiracy to violate Plaintiff's civil rights under N.J.S.A. 10:6-2(c).

129.   Plaintiff has been damaged as a direct and proximate result of the conspiracy to violate Plaintiff's civil rights under N.J.S.A. 10:6-2(c).

130.   At all times relevant herein, Defendants were acting under the color of law and under the authority of the Borough.

**WHEREFORE**, Plaintiff Michael Cioffi seeks compensatory and punitive damages against Mayor Mario M. Kranjac, Council President Carrol McMorrow, Consalvo, and Park, jointly and severally, in their individual and official capacities, pursuant to N.J.S.A. 10:6-2(c) along with court costs and attorneys' fees pursuant to N.J.S.A. 10:6-2(f) and such other and further relief including a Court Order enjoining further retaliation.

GALANTUCCI, PATUTO, DEVENCENTES,
POTTER & DOYLE, L.L.C.


BY:    s/ Robert L. Galantucci
       ROBERT L. GALANTUCCI


       s/ David J. Altieri
       DAVID J. ALTIERI

**JURY TRIAL DEMANDED**

Plaintiff requests a jury trial on all claims.

**DESIGNATION OF TRIAL COUNSEL**

Robert L. Galantucci, Esq. is hereby designated as trial counsel on behalf of

Plaintiff in the matter captioned above.

GALANTUCCI, PATUTO, DEVENCENTES,
POTTER & DOYLE, L.L.C.


BY:   s/ Robert L. Galantucci
       ROBERT L. GALANTUCCI


       s/ David J. Altieri
       DAVID J. ALTIERI

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I hereby certify that on this day, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceedings, except insofar as on April 29, 2016, this office filed an Action in Lieu of Prerogative Writs pursuant to <u>N.J. Court Rule</u> 4:69-1, accompanied by an Order to Show Cause filed pursuant to <u>N.J. Court Rule</u> 4:52-1(b) in the Superior Court of New Jersey, Law Division, Bergen County.  That matter was listed under Docket No. BER-L-3468-16.   On July 7, 2016, Stefani C. Schwartz, Esq. of Schwartz, Simon, Edelstein & Celso, L.L.C. filed a Notice of Removal of the state court action to this Court, which is listed under Docket No. 16-CV-04062-WJM-MF.

I certify under penalty of perjury that the foregoing is true and correct.

GALANTUCCI, PATUTO, DEVENCENTES,
POTTER & DOYLE, L.L.C.


BY:    <u>s/ Robert L. Galantucci</u>
        ROBERT L. GALANTUCCI


        <u>s/ David J. Altieri</u>
        DAVID J. ALTIERI

## CERTIFICATION PURSUANT TO LOVAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration because Plaintiff's claims are based on an alleged violation of a right secured by the Constitution of the United States, New Jersey Constitution, and state law, and Plaintiff's damages are in excess of $150,000.00.

I certify under penalty of perjury that the foregoing is true and correct.

GALANTUCCI, PATUTO, DEVENCENTES,
POTTER & DOYLE, L.L.C.


BY:    s/ Robert L. Galantucci
       ROBERT L. GALANTUCCI


       s/ David J. Altieri
       DAVID J. ALTIERI